In re ESTATE OF HIPP, INC., Debtor.

PHOENIX GRAIN, INC., Plaintiff,

v.

ESTATE OF HIPP, INC., and Thomas J. Griffith, Trustee for Hipp, Inc., Defendants.

Adv. No. 287–2092.

United States Bankruptcy Court, N.D. Texas, Amarillo Division.

July 12, 1988.

Floyd D. Holder, Jr., Lubbock, Tex., for Griffith.

Kent Brooks, McCrory, Henderson & Brooks, Dallas, Tex., for Phoenix Grain, Inc.

## MEMORANDUM OF OPINION CONCERNING RENTALS

JOHN C. AKARD, Bankruptcy Judge.

This is another round in the continuing battles between Phoenix Grain, Inc. (Phoenix) and Thomas J. Griffith, Trustee-in-Bankruptcy for Hipp, Inc. (Griffith).

### Facts

On October 1, 1973 Hipp, Inc., executed a promissory note payable to John Hancock Mutual Life Insurance Company (the Hancock Note) for $2 million. The note was secured by liens on grain storage elevators located in Tulia, Nazareth, Vigo Park and Kress, Texas (the four elevators). On March 30, 1984 Hipp, Inc., leased the four elevators to Oles Grain Company (Oles Grain). On May 3, 1984 Oles Grain purchased the Hancock Note. At that time the principal balance was $570,296.87.[1] In a prior proceeding Phoenix alleged that the Hancock Note had been endorsed to it and sought to foreclose on the elevators. The Court concluded that when Oles Grain, as the tenant of the property, acquired the lien on the property, the note and liens were extinguished. Therefore, the Court found that Phoenix had no interest in the Hancock Note. *In re Hipp, Inc.*, 71 B.R. 643 (Bankr.N.D.Tex.1987) (This case will be referred to as *Hipp I*).[2] Subsequent to that ruling, Phoenix Grain filed the captioned Adversary Proceeding asserting that it, as assignee of Oles Grain, is entitled to possession of the four elevators until the pre-paid rental has been consumed.

*Hipp I* was tried on September 24, 1986. Griffith, Phoenix, Oles Grain (through its attorney in its bankruptcy proceedings) and Robert H. Tolar, the Trustee-in-Bankruptcy for Oles Grain (Tolar), fully participated in the trial. At trial, neither the attorney for Oles Grain nor Tolar asserted that the

---

1. Accrued interest on May 3, 1984 was $9,117.61. The principal and interest total slightly less than the $580,118.91 which Oles Grain paid to Hancock for the note. The difference may be represented by expenses which Hancock charged to Oles Grain.

2. The principal shareholder of Phoenix is Dr. C.P. Oles, the father of David Oles who, in turn, was the principal officer of Oles Grain until its bankruptcy.

lease between Hipp, Inc. and Oles Grain remained in effect.

Hipp, Inc. filed for relief under Chapter 11 of the Bankruptcy Code on April 11, 1984 (only a few days after leasing the four elevators to Oles Grain). Griffith was appointed Trustee in April, 1984. The case was converted to Chapter 7 on March 30, 1988, and Griffith was appointed Trustee in the Chapter 7 proceedings as well.

A petition for involuntary bankruptcy was filed against Oles Grain on April 4, 1985 in the Amarillo Division of this Court. The Debtor converted the case to a reorganization under Chapter 11 on June 25, 1985 and an order for relief was entered. In July, 1985 Tolar was appointed Trustee. The case was transferred to the Dallas Division of this Court on October 17, 1985.

Both Phoenix and Tolar appealed from this Court's decision in *Hipp I*. Griffith and Tolar settled the controversies between the two bankruptcy estates and a motion to approve the compromise and settlement was filed in both bankruptcy estates. The Court approved the compromise in the Oles Grain bankruptcy, Case No. 385–32758–A–11, on October 15, 1987 after hearing held October 8, 1987. The Court's approval was conditioned on the compromise being approved in the Hipp, Inc. bankruptcy.

On October 14, 1987 Honorable Steven A. Felsenthal, United States Bankruptcy Judge heard counsel for Griffith, counsel for Tolar and counsel for Phoenix on the issue of the compromise and settlement in the Hipp, Inc. case. In open Court, Phoenix withdrew its objections to the compromise. The Court approved the compromise by Order dated October 29, 1987. The compromise provided for a complete settlement of all issues between Griffith and Tolar and provided that the proceeds of the sale of the four elevators be divided between their respective bankruptcy estates.

### Issue

The complaint filed in this proceeding asserted that "Phoenix is the apparent holder of certain leasehold interests originally created by Hipp, Inc. (prior to bankruptcy), in favor of Oles Grain Company, by virtue of a decision by this Court" in *Hipp I*. That is an incorrect reading of this Court's decision. This Court determined that Phoenix had no interest in the Hancock Note and it denied Phoenix's motion to be relieved from the automatic stay. The complaint then asserted that Phoenix acquired all of the interest of Oles Grain by virtue of a General Transfer and Release of Claims executed by Tolar on October 23, 1986.

### DISCUSSION

On September 18, 1986 Tolar, Oles Grain, David W. Oles (a debtor in a related Chapter 7 proceeding), Jack A. Moffitt, Jr., Trustee-in-Bankruptcy for David W. Oles, C.P. Oles, Curtis Commodities, Inc., Tulia Commodities, Top O' Texas Truck Brokerage, Inc., OTC Transportation, Inc., Oles Trucking Company, Palo Duro Elevator Company, Inc., and Phoenix entered into an Agreement to Compromise Controversies. The agreement was not filed in the Oles Grain bankruptcy records until December 19, 1986. Tolar's attorney acknowledged existence of this agreement at the hearing on September 24, 1986, but did not reveal its terms. The agreement settled a number of adversary proceedings, including a complaint objecting to the discharge of David W. Oles, provided for the release by Tolar of his claims to various items of property, including grain elevators in Amarillo, Texas to Phoenix and settled a number of other matters in exchange for specified payments by C.P. Oles or Phoenix to Tolar. In Paragraph 6(c) Tolar agreed to release or transfer any interest which he had in the Hancock Note and the collateral securing the Hancock note including all agreements and assignments related to the Hancock Note to Phoenix. The parties filed a joint motion to compromise the controversies on September 18, 1986 and the Court approved the compromise on October 6, 1986. The compromise, the motion to approve the compromise and the order approving the compromise contained no mention of a lease on the four elevators.

■ Acting pursuant to Paragraph 6(c) of the settlement agreement, on October

23, 1986 Tolar executed a General Transfer and Release of Claims in which he transferred "all interest, if any," which he in his capacity as Trustee for Oles Grain Company had in the Hancock Note "including all deeds of trust, security agreements, assignments of leases and rents, guarantees and other agreements and assignments related thereto (collectively called the 'Property')" to Phoenix. Tolar specifically released "any and all claims in and to the Property held by, or which might accrue to [him]" to Phoenix. The document further provided "[t]his transfer and release is to be construed broadly, and Robert Tolar, Trustee does hereby expressly disclaim and release any residual interest in the Property." Again no reference was made to a lease on the four elevators. By way of this General Transfer and Release of Claims Phoenix acquired whatever "interest, if any" Tolar had in the Hancock Note and the security for that note. However, this Court found in *Hipp I* that the Hancock Note was extinguished on May 3, 1984 and when the Oles Grain bankruptcy was filed in April, 1985 there was no Hancock Note to pass to Tolar. Therefore, Tolar had no interest in the Hancock Note and Phoenix acquired nothing under the General Transfer.

Phoenix chose to negotiate with Tolar on the assumption that the Hancock Note was still in effect. Although the question of the status of the Hancock Note was raised at the hearing held September 24, 1986, Phoenix decided to proceed with its settlement without a decision from this Court as to the viability of that Note. Tolar made no warranties with respect to the Hancock Note; he only transferred his "interest, if any."

Even given the most generous reading, the General Transfer does not encompass a lease on the four grain elevators nor any claim for prepaid rental with respect to those elevators. Thus, any residual claim under the lease—whether to the lease itself or for prepaid rentals—clearly was compromised and released by the settlement between Tolar and Griffith.

■ There was good reason for the settlement documents between Tolar and Phoenix not to assign the lease. The lease was no longer in effect. Section 365(d)(4) of the Bankruptcy Code [3] reads as follows:

Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

No evidence was presented to this Court that Tolar assumed the unexpired lease on behalf of the estate of Oles Grain nor does a review of the docket sheet in that case reveal any order granting assumption. Failing assumption, the lease terminated.[4] Any residual claim which might possibly have existed by Tolar against Griffith for unpaid rentals or Griffith against Tolar for damages for termination of the lease was extinguished in the compromise and settlement made by the two Trustees.

■ Phoenix would treat the $580,118.91 paid by Oles Grain for the Hancock Note as an account which somehow was drawn upon each time rent became due under the lease, and then insist that the balance in this account was approximately $420,000.00 on June 25, 1985 the time of the entry of the order for relief in the Oles Grain Chapter 11 case. Phoenix then concludes that

**3.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are to sections in the Bankruptcy Code.

**4.** Although § 365 relates to executory contracts and leases, there is no requirement that the lease be executory for these termination provisions to apply. There is some indication in documents filed in this proceeding that Griffith allowed Tolar to remain in possession of the four elevators for a substantial period of time during the Oles Grain Chapter 11 proceedings. Griffith may well have done that in order to protect the property from vandalism or other reasons sufficient to him. Such action does not constitute an assumption of the lease either by Tolar or Griffith.

this $420,000.00 is a post-petition asset of the Oles Grain bankruptcy estate. This is not the case. Payment is considered made at the time the note is acquired rather than in increments as the rental payments become due. *See Coppard v. Martin*, 15 F.2d 743 (5th Cir.1926) *cert. denied*, 273 U.S. 753, 47 S.Ct. 456, 71 L.Ed. 874 (1976), and other cases cited in *Hipp I*, 71 B.R. 643 at 651. Thus, when Oles Grain acquired the Hancock Note on May 3, 1984, the Hancock Note and the liens securing it were extinguished and Oles Grain had a lease with prepaid rentals. The asset which went into the Oles Grain bankruptcy estate was not an account to be drawn upon but a lease with prepaid rentals. True, the landlord must account to the tenant for what the tenant paid for the lien. *Thrall v. Omaha Hotel Co.*, 5 Neb. 295 (1877) and cases cited in *Hipp I*, 71 B.R. 643 at 651. However, that obligation is by way of prepaid rent; it is not a claim under a mortgage.

Phoenix asserted that the broad language of the General Transfer from Tolar to Phoenix on October. 23, 1986 included this "account" and the obligation of the landlord to account to the tenant for what he paid for the lien. That is simply not the case. The Hancock Note, all liens securing it, and all rights under the note and lien were terminated when Oles Grain purchased the Note. Oles Grain then held a lease with prepaid rentals. The tenant's rights under the lease could not be assigned from Tolar to Phoenix because (as Phoenix admits) the lease was deemed rejected when it was not assumed by Tolar within time prescribed in § 365(d)(4). Clearly all that Tolar had was a claim for the prepaid rentals under the lease. Phoenix asserted that the broad language of the transfer of October 23, 1986 included these claims for prepaid rentals. The Court cannot agree. The General Transfer of October 23, 1986 only related to "all interest, if any," which Tolar had in the Hancock Note and the security for the Hancock Note. The prepaid rentals under the lease cannot

be considered to be rights relating to the Hancock Note or the security for it.

■ Oles Grain had a right to the prepaid rental under the lease prior to the filing of its bankruptcy. Thus, its right would be subject to setoff against any prepetition claims of Hipp, Inc. against Oles Grain under § 553. Tolar retained the claim for prepaid rents. Both the claim for prepaid rents and the setoffs urged by Griffith were released in the settlement and compromise between Griffith and Tolar.

Clearly, Tolar owned the claim for prepaid rentals at the time of the hearing on September 24, 1986. At the hearing and in the briefs filed shortly thereafter, both Tolar and Phoenix were well aware that Griffith was asserting that the Hancock Note was canceled and that Oles Grain's only claim was for prepaid rentals. In the face of this knowledge, Tolar and Phoenix decided to proceed with their compromise and settlement. If they had wished to assign the claim for prepaid rentals to Phoenix, the compromise and settlement could have been amended and the matter could have been considered by the Dallas Bankruptcy Court when it determined whether or not to approve the compromise and settlement. Griffith then would have been aware of the assignment of that claim and could have valued it in his negotiations with Tolar. The claim for prepaid rentals was undoubtedly a factor in the settlement negotiations between Griffith and Tolar.

Griffith also raises issues of res judicata and estoppel. However, it is not necessary to reach those arguments in view of the Court's conclusions.

ORDER ACCORDINGLY.[5]

---

**5.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to

Bankruptcy Rule 7052.